UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY D. KYLES (#234503),

                              CASE NO. 2:13-CV-10355
              Plaintiff,          JUDGE STEPHEN J. MURPHY, III
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

GLENN KUSEY,
BRAD PURVES,
TIMOTHY BEAVER and
LLOYD RAPELJE,

                 Defendants,
_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS PURVES,
BEAVER AND RAPELJE'S MOTION TO DISMISS (Doc. Ent. 10), DEFENDANT
KUSEY'S MOTION TO DISMISS (Doc. Ent. 12), DEFENDANTS' MOTION TO STAY
DISCOVERY (Doc. Ent. 14) and PLAINTIFF'S MOTION IN RESPONSE (Doc. Ent. 15)**

I.      RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
         A.     Plaintiff Kyles's January 29, 2013 complaint is based upon the "free exercise" clause of the First
              Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
         B.     Defendants' March 2013 motions to dismiss interpret plaintiff's complaint as based upon the
              Eighth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
         C.     Plaintiff's April 8, 2013 response reinforces the position that his complaint is based upon a
              violation of the "free exercise" clause of the First Amendment. . . . . . . . . . . . . . . . . . . . . . . . 6
         D.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
              1.     The Court should deny defendants' March 2013 motions to dismiss. . . . . . . . . . . . . . 11
              2.     If the Court agrees with my foregoing recommendation, then it need not address the issue
                  of qualified immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
              3.     Furthermore, Defendants Kusey, Purves, Beaver and Rapelje Are Not Entitled to
                  Dismissal of Plaintiff's Claims against Them in Their Official Capacities for Injunctive or
                  Declaratory Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
              4.     Finally, if the Court agrees with this recommendation, then it should also deny
                  defendants' April 3, 2013 Motion to Stay Discovery (Doc. Ent. 14). . . . . . . . . . . . . . 18

III.    NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.    **RECOMMENDATION:** The Court should deny defendants Purves, Beaver and

Rapelje's motion to dismiss (Doc. Ent. 10) and deny defendant Kusey's motion to dismiss (Doc.

Ent. 12), except to the extent that plaintiff brings claims against defendants in their official

capacities for damages.

Also, to the extent plaintiff's motion in response (Doc. Ent. 15) seeks an order granting

plaintiff the relief sought in his complaint (Doc. Ent. 1), plaintiff's motion (Doc. Ent. 15) should

be denied.

If the Court agrees with this recommendation, then it should also deny defendants' April

3, 2013 motion to stay discovery (Doc. Ent. 14) and set a deadline by which defendants should

answer and respond to plaintiff's March 8, 2013 discovery requests (Doc. Ent. 14-2) as described

in Fed. Rules Civ. P. 33 and 34.

II.    **REPORT:**

A.    **Plaintiff Kyles's January 29, 2013 complaint is based upon the "free exercise" clause of the First Amendment.[1]**

Anthony D. Kyles (#234503) is currently incarcerated at the Oaks Correctional Facility

(ECF) in Manistee, Michigan.  *See* Doc. Ent. 7.  On January 29, 2013, while incarcerated at

Saginaw Correctional Facility (SRF) in Freeland, Michigan, Kyles filed the instant, verified

prisoner civil rights complaint pro se against Glenn Kusey, Brad Purves, Timothy Beaver and

Lloyd Rapelje, based upon the Ramadan 2012 diet.  Doc. Ent. 1 at 1-4, 21-22.

---

[1]This case is one of a few before this Court in which plaintiffs contest the adequacy of their diets during Ramadan.  *See, i.e., Welch v. Spaulding*, No. 2:12-cv-13172-PDB-PJK (E.D. Mich.); *Conway v. Purves*, No. 2:13-cv-10271-PJD-PJK (E.D. Mich.); and *Kyles v. Kusey*, No. 2:13-cv-10355-SJM-PJK (E.D. Mich.); *see also Heard v. Finco*, No. 2:13-cv-11342-VAR-MJH (E.D. Mich.) (transferred to W.D. Mich. on April 3, 2013 (Case No. 1:13-cv-00373)).

Specifically, plaintiff explains that he fasted during Ramadan from July 20, 2012 to August 18, 2012.  Doc. Ent. 1 at 3 ¶ 1.  During this period, plaintiff claims, Purves, Kusey and Rapelje provided plaintiff "with bag meals for breakfast and dinner[.]" Doc. Ent. 1 at 3 ¶ 2.  According to plaintiff, after the menu was provided, he added up the Ramadan menu's caloric intake and recognized that he "was being serve[d] approximately 1300 calories per day, placing a burden upon plaintiff['s] religious freedom."  Doc. Ent. 1 at 3 ¶ 3.

By way of July 23, 2012 letters (Doc. Ent. 1 at 6-8), plaintiff wrote to defendants Purves, Kusey, Rapelje and Beavers "regarding the low amounts of calories . . to let them know that the Ram[a]dan daily meals were inadequate."  Doc. Ent. 1 at 3 ¶ 4.  Kusey met with plaintiff, but responded, "[t]his is what Lansing has provided[,]" while Rapelje and Beaver did not respond to the letter.  Doc. Ent. 1 at 3 ¶ 5.

Plaintiff claims he "still adhered to his religious belief and practice, even with the daily caloric intake being inadequate for the whole month of Ramadan."  Doc. Ent. 1 at 3 ¶ 6.  Plaintiff filed an MDOC grievance regarding the nutritional caloric intake served in the Ramadan bagged meals and pursued that grievance through Step III.  Doc. Ent. 1 at 3 ¶¶ 7-9.[2]  Plaintiff claims that defendants Purves, Kusey, Rapelje and Beaver provided "a menu for the month of Ramadan that

_____

[2]Attached to plaintiff's complaint are grievance materials.  On or about July 25, 2012, plaintiff completed an MDOC Step I grievance (**SRF-2012-07-1205-09B**) regarding the nutritional caloric intake served in the Ramadan bagged meals.  The text of the grievance mentions Kusey, Beavers, Rapelje and Purves.  It was received at Step I on July 27, 2012.  Doc. Ent. 1 at 10, 14.  Kusey's Step I response is dated August 7, 2012.  Doc. Ent. 1 at 11, 14.
On or about August 21, 2012, plaintiff completed a Step II grievance appeal.  Doc. Ent. 1 at 13, 15.  Warden Rapelje's Step II grievance response is dated August 28, 2012.  Doc. Ent. 1 at 16.        On or about September 4, 2012, plaintiff completed a Step III grievance appeal.  Doc. Ent. 1 at 19-20.  The Step III grievance response is dated December 28, 2012.  Doc. Ent. 1 at 18.

was approximately half the daily calories and nutrition of the required daily caloric intake." Doc. Ent. 1 at 3 ¶ 10.

Plaintiff's claims are based upon the "free exercise" clause of the First Amendment. According to plaintiff, "[t]he deliberate denial of the required daily caloric and nutritional intake during the recognized religious month of Ramadan violated [his] right to freely exercise his religious belief."[3]  It is plaintiff's position that "[t]his substantial burden on the free exercise of the plaintiff's religion (for a period of 30 days) [c]onstituted a due process violation under the First Amendment."  Furthermore, plaintiff claims he "has been and will continue to be irreparably injured by the conduct of being deprived of policy mandated (adequate) calories during Ramadan by the defendants unless [the] Court grants the preliminary injunctive relief which the plaintiff seeks."  Doc. Ent. 1 at 21.  Plaintiff seeks injunctive relief, as well as compensatory damages, punitive damages, a jury trial and costs.  Doc. Ent. 1 at 22.

**B.    Defendants' March 2013 motions to dismiss interpret plaintiff's complaint as based upon the Eighth Amendment.**

Judge Murphy has referred this case to me for all pretrial matters.  Doc. Ent. 8.  Currently before the Court is defendants Purves, Beaver and Rapelje's March 25, 2013 motion to dismiss (Doc. Ent. 10).  Also before the Court is defendant Kusey's March 28, 2013 motion to dismiss (Doc. Ent. 12), wherein he adopts and incorporates the arguments advanced by defendants Purves, Beavers and Rapelje in their March 25, 2013 dispositive motion. *See* Doc. Ent. 12 at 8.

---

[3]Although plaintiff's January 29, 2013 original complaint alleges that there was a "deliberate denial of the required daily caloric and nutritional intake[,]" Doc. Ent. 1 at 21, this report and recommendation does not interpret this phrase as alleging an Eighth Amendment deliberate indifference claim.

4

As an initial matter, defendants Beaver, Purves and Rapelje argue that plaintiff's complaint "does not raise any allegations that he was unable to participate in the fast." It is defendants' position that plaintiff's complaint "is premised on his claim as to the adequacy of the nutritional value of the bagged meals." Then, citing *Campbell v. Cornell Corrections of Rhode Island, Inc.*, 564 F.Supp.2d 99, 102-103 (D. R.I. 2008),[4] defendants assert that "[a]llegations as to the nutritional value of meals assert an Eighth Amendment claim, not a First Amendment claim." Doc. Ent. 10 at 6.

In support of defendants' argument that plaintiff has failed to state an Eighth Amendment claim upon which relief may be granted, they cite MDOC PD 04.04.100 ("Offender Meals") ¶ F;[5] *Mobley v. Smith*, No. 4:05-cv-153, 2007 WL 1650934 (W.D. Mich. June 4, 2007);[6] and point out that "Kyles elected to forego the three daily meals in order to participate in the Ramadan Fast." Also, it is defendants' position that plaintiff "has failed to assert and demonstrate with medical records, any form of health related injury[,]" and that plaintiff's complaint "is even silent as to any *de minimus* injury such as hunger pains or stomach cramps." Furthermore, defendants assert,

---

[4]*Campbell*, 564 F.Supp.2d at 103 ("Here, Campbell does not allege that Wyatt failed to provide him with food that was adequate in quantity, nutritional value or in any other respect. Rather, he alleges that Wyatt failed to provide him with food that was consistent with his religious beliefs. Consequently, he has failed to state a claim under the Eighth Amendment.").

[5]"At least three meals shall be served to offenders at the facility at regular meal times during each 24-hour period[.]" MDOC PD 04.07.100, effective December 28, 2009, ¶ F.

[6]*Mobley*, 2007 WL 1650934 at *6 ("[P]laintiff's complaint does not allege that he was denied food, or that even that he was denied wholesome or nutritionally adequate food. Instead, plaintiff alleges that he ate only fruits and vegetables solely because of his religious preference for a kosher diet. Although such an allegation might state a claim for violation of the First Amendment's free exercise clause, an allegation that a prisoner has elected not to consume the "whole meals" provided by the prison-and solely because of his religious preference-does not state a claim for violation of the Eighth Amendment.").

"guidelines and recommendations as to nutritional[] intake are not constitutional requirements."

Doc. Ent. 10 at 8. Citing *Rhodes v. Chapman*, 452 U.S. 337 (1981),[7] defendants contend that

"[t]he Eighth Amendment requires only that inmates be provided food that is sufficient to

maintain their health." Doc. Ent. 10 at 8-9. Defendants argue that no such allegation appears in

the record. Doc. Ent. 10 at 9.

**C.  Plaintiff's April 8, 2013 response reinforces the position that his complaint is based upon a violation of the "free exercise" clause of the First Amendment.**

**1.**   Pursuant to my April 2, 2013 order (Doc. Ent. 13), plaintiff's response was due May 28,

2013. On April 8, 2013, plaintiff filed a motion in response (Doc. Ent. 15 at 1-13), attached to

which are Exhibits A-L (Doc. Ent. 15 at 14-54).

**2.**   It is plaintiff's position that "defendant[s] infringed upon his right to freely exercise his

religion by placing upon him an undue burden on his fast during The Holy Month of Ramadan,

with being fed inadequate nutritional and caloric bag meals for the entire month of the fast." Doc

Ent. 15 at 6. Plaintiff cites Purves's June 2012 memoranda to Wardens regarding Ramadan 2012

(Doc. Ent. 15 at 23-26), MDOC PD 05.03.150 (""Religious Beliefs and Practices of Prisoners") ¶

PP,[8] and MDOC PD 04.07.100 ¶ G[9] and notes that the policies and memorandum do not explain

that "participation in Ramadan would [result in] voluntary los[s] of Nutrition and Caloric intake

---

[7]*Rhodes*, 452 U.S. at 348 ("The double celling made necessary by the unanticipated increase in prison population did not lead to deprivations of essential food, medical care, or sanitation.").

[8]In the version of the policy effective July 26, 2013, ¶¶ PP provides, in part, that "[a]ll religious menus shall meet the minimum nutritional standards set forth in PD 04.07.100 'Offender Meals'."

[9]"All menus and all meals as actually served at a correctional facility shall satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council." MDOC PD 04.07.100, effective December 28, 2009, ¶ G.

by the plaintiff['s] observance of his religious tenets (Fast)[.]" Doc. Ent. 15 at 7.  Then, citing the
*Dietary Guidelines for Americans, 2010* (Doc. Ent. 15 at 28-29), plaintiff contends that the
caloric intake he received during Ramadan 2012 was appropriate for a 2-3 year old, moderately
active male child and points out that "sedentary men on the average need 2000 calories or more to
maintain continued health."  *Cunningham v. Jones*, 567 F.2d 653, 657 (6th Cir. 1977).

Next, plaintiff cites a February 3, 2012 letter from Gwen Imes, a Manager at the Michigan
Department of Community Health, wherein she stated, "[a]ccording to the 2010 Dietary
Guidelines for Americans, calorie requirements range from . . . 2,000 to 3,000 calories per day for
adult men, depending on age and physical activity level."  Doc. Ent. 15 at 34-35; Doc. Ent. 15 at
8.  Plaintiff also cites a March 13, 2012 letter from Amy Frady, a USDA Nutritionist, wherein she
informs that "[o]n average, a male between ages 19-50 should consume between 2,400 to 2,800
calories per day, depending on physical activity level."  Doc. Ent. 15 at 32-33; Doc. Ent. 15 at 7-
8.[10]

Citing Judge Maloney's opinion in *Heard v. Caruso, et al.*, No. 2:05-cv-231, 2012 WL
951698 (W.D. Mich. Mar. 20, 2012),[11] plaintiff contends that the MDOC and defendants "clearly
understand that the daily recommended caloric intake for prisoner[s] [is] 2900 per day."  Also,
citing Kusey's August 7, 2012 Step I response in SRF-01205 (Doc. Ent. 1 at 11, 14) and Kusey's

---

[10]Attached to plaintiff's April 8, 2013 filing is the October 8, 2012 affidavit of Charles
Conway (#336827) (Doc. Ent. 15 at 30-31), who is currently incarcerated at Saginaw Correctional
Facility (SRF) and is a party to Case No. 2:13-cv-10271-PJD-PJK (E.D. Mich.).  It appears that the
Frady and Imes letters are responses to letters prepared by Conway.

[11]A copy of this decision is attached to plaintiff's April 8, 2013 response (Doc. Ent. 15 at 36-
49).  Heard had alleged that the denial of a Nation of Islam (NOI) diet "placed a substantial burden
on his ability to freely exercise his religious beliefs[,]" and Heard had claimed "that defendants'
actions violated his equal protection rights given the accommodation of religious diets for Jewish
and Buddhist prisoners, as well as his rights under the RLUIPA."  *Heard*, 2012 WL 951698, *1.

August 6, 2012 MDOC Memorandum to Becky Scherf (Doc. Ent. 15 at 50-51), plaintiff claims he "informed defendants of the inadequate nutritional caloric daily intake of the Ramadan bag meals." Doc. Ent. 15 at 8. Furthermore, plaintiff notes that MDOC PD 04.07.100 ¶ G requires all menus and meals to satisfy nutritional and caloric recommendations, and he also cites MDOC PD 04.07.100 ¶ J,[12] contending that Kusey "could have on his own rectified the matter." Doc. Ent. 15 at 9.

Then, citing his July 23, 2012 letter to Beavers (Doc. Ent. 1 at 8) and MDOC PD 05.03.150 ¶¶ AAA & FFF, plaintiff claims that Beavers "only added to the burden that was being place[d] on plaintiff with the daily caloric intake." As to Warden Rapelje, plaintiff cites Mich. Admin. Code R. 791.2205 ("Warden; head of the office of residential and electronic programs; appointment; duties.") and contends that by never responding to letters or stepping in to ensure that MDOC policy was being followed, Rapelje "continued to allow the continual burden to be place[d] upon plaintiff's constitutional rights." Doc. Ent. 15 at 9.

**3.**     Finally, plaintiff addresses the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Doc. Ent. 15 at 10-12. First, plaintiff claims that defendants are not adhering to MDOC PD 04.07.100 ¶ G and MDOC PD 05.03.150 ¶ PP, so "there [is] no justification for [their] actions." Second, plaintiff claims that "[t]he alternative means would have been to adhere to the Dietary Guidelines set by the USDA which are mandated by MDOC policy directive." Doc. Ent.

---

[12]"The institutional Food Service Director, SAI Food Service Supervisor, Tuscola RRTP Supervisor, or designee may elect to increase the serving size of a food item identified on the regular diet menu or include additional food items. However, as stated in Paragraph G, meals as actually served must satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes, including those regarding fat and cholesterol content." MDOC PD 04.07.100, effective December 28, 2009, ¶ J.

15 at 10.  Third, plaintiff claims that the MDOC would not incur additional cost to provide the required daily caloric intake, because "the MDOC would have spent no more money on feeding the plaintiff had he not been on Ramadan[,]" and "there is no issue of security or issues with other prisoners relevant to this factor."  Doc. Ent. 15 at 10-11.  Fourth, plaintiff argues that "[a]nything other th[a]n fulfilling the caloric daily intake would still have been a[] substantial burden on the plaintiff's right to freely exercise his religion."  Doc. Ent. 15 at 11.

**4.**    That plaintiff's complaint is based upon the "free exercise" clause of the First Amendment is clarified by his assertion that "a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009); *see also Sherbert v. Verner*, 374 U.S. 398, 404 (1963) ("The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand.").  Doc. Ent. 15 at 9.

Furthermore, plaintiff notes that "a religious exercise is substantially burdened under 42 U.S.C. § 2000cc-1(a) when a government . . . places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief."  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010).  *See* Doc. Ent. 15 at 9-10.

Plaintiff claims he is instructed that "he can eat and drink as much as he want[s] until dawn."  And, he attacks defendant Kusey's August 6, 2012 rationale that observing the Ramadan

fast "where no food or drink is permitted between dawn and sunset according to Islamic teachings . . . results in not receiving the lunch meal[,]" Doc. Ent. 15 at 51.  Plaintiff contends that "all three regular statewide meals are being served in the daylight hours[.]"  Thus, plaintiff claims that under Kusey's reasoning, plaintiff "should be forced to give up all meals."  Instead, plaintiff claims, this is why MDOC PD 05.03.150 ¶ PP requires religious menus to meet minimum nutritional standards.  Doc. Ent. 15 at 10.  Plaintiff also attacks Kusey's August 6, 2012 assertion that "[t]hose offenders choosing to participate in Ramadan are choosing to abstain from the regular Statewide menu and therefore, are not receiving the same nutritional content because of fasting."  Doc. Ent. 15 at 51.  Plaintiff claims he "had no reason to believe that he would have received less calories[.]"  Doc. Ent. 15 at 11.

In the end, plaintiff responds that the Ramadan 2012 diet "place[d] a burden upon [his] First Amendment [rights] by feeding less calories th[a]n what was required [which] caused [him] to have substantial pressure place[d] on him to complete the fast or break it."  Doc. Ent. 15 at 12.

**5.**     The interpretation of plaintiff's complaint as based upon the First Amendment is also buttressed by his April 1, 2013 affidavit (Doc. Ent. 15 at 52-54).  Therein, plaintiff explains that he was incarcerated at SRF during Ramadan 2012 (July 20, 2012 to August 18, 2012) and participated in the religious practice of fasting.  Doc. Ent. 15 at 53 ¶ 1.  Among other things, plaintiff attests:

> "I experience thoughts of anger, frustration, disgust, hunger after eating and moments of doubt about my completion of my Fast.  The fact that the caloric intake was lacking in the Ramadan bags, thing were compounded by having an Officer Latondress on [August 8, 2012] in housing unit 800, on base with no hair net or gloves on serving Grits to Muslims participating in Ramadan."

> On August 13, 2012, plaintiff wrote SRF-01336 "about not receiving any BREAD in my bag for the second time on [August 12, 2012]."  Plaintiff "spent more time

10

fights and warring with the Defendants over what was required that, [he] could not enjoy [his] time with Allah."

"It took me a few months after Ramadan to recuperate from the meal[s] that were served. My body felt weak all the time."

"A few times I went to health care for shortage of breathing and chest pains. I was told I would be seen the next day but was not seen until approximately a week."

"I was even ask[ed] once by a nurse about weight loss after I had just seen them for a screening a week prior and was five to six pounds less."

Doc. Ent. 15 at 53-54 ¶¶ 8-12.

**D.    Analysis**

**1.    The Court should deny defendants' March 2013 motions to dismiss.**

Defendants' motions to dismiss are based, for the most part, upon Fed. R. Civ. P. 12(b)(6). Doc. Ent. 10 at 1, 8 n.1, 11; Doc. Ent. 12 at 1, 5, 9. This rule provides that a party may assert by motion the defense of "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

Here, defendants' March 2013 motions to dismiss characterize plaintiff's complaint as alleging only an Eighth Amendment claim. Doc. Ent. 10 at 6-9, Doc. Ent. 12 at 8. As stated in plaintiff's January 29, 2013 complaint (Doc. Ent. 1 at 21) and as affirmed by his April 8, 2013 response (Doc. Ent. 15), plaintiff's claims are based upon an alleged violation of the "free exercise" clause of the First Amendment. Of particular note is plaintiff's statement in response that he "has never asserted cruel and unusual punishment[,]" explaining that he "not once complained of the taste or what type of food [was] being served in the Ramadan bag, [but] only that they were in violation of MDOC policy, the USDA and Dietary Guidelines." Doc. Ent. 15 at 12. Therefore, defendants' March 2013 motions to dismiss (Doc. Entries 10, 12) should be

11

denied, because the motions do not address the First Amendment free exercise claim which is the

subject of plaintiff's complaint.

Furthermore, plaintiff's complaint states a claim that his First Amendment right to free

exercise was substantially burdened by subjecting him to a Ramadan menu that was

approximately half of the required daily nutritional and caloric intake.  *See* Doc. Ent. 1 at 3, 21.

As the Sixth Circuit has stated in the context of a 42 U.S.C. § 1983 First Amendment free

exercise claim, "'prison administrators must provide an adequate diet without violating the

inmate's religious dietary restrictions.'"  *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)

(quoting *Alexander v. Carrick*, 31 Fed.Appx. 176, 179 (6th Cir.2002)); *see also Makin v.*

*Colorado Dept. Of Corrections*, 183 F.3d 1205, 1211-1214 (10th Cir. 1999) ("the burden

defendants placed on Mr. Makin diminished the spiritual experience he otherwise could gain

through Ramadan[,]" and "the directive [that inmates in segregation would be unable to

participate in special feeding activities] infringed on Mr. Makin's right to exercise his religion and

that defendants did not put forth any legitimate penological interests to justify that

infringement."); *Couch v. Jabe*, 479 F.Supp.2d 569, 588-589 (W.D. Va. 2006) (memorandum

opinion of Sargent, M.J.) (where plaintiff alleged that "the meals served by the defendants to him

as well as to the other World Community fast participants during Ramadan 2004, were inadequate

in nutritious value and caloric content, in violation of his right to freely express his religious

beliefs under both the First Amendment and RLUIPA[,]" "a genuine issue of material fact exists

as to whether the defendants provided Couch with adequate nutrition and calories in violation of

Couch's constitutional and statutory rights to freely exercise his religion.  Thus, I find that,

viewing the facts in the light most favorable to Couch, a reasonable jury could find that inmates

participating in the fast, receiving only 1000 daily calories, were substantially pressured to break the fast, in violation of Islamic tenets, in order to satisfy their physical hunger.") (internal footnote omitted).

**2.    If the Court agrees with my foregoing recommendation, then it need not address the issue of qualified immunity.**

a.    As the United States Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).[13]

The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996)).[14]  *See also Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).  "Once the

_____

[13]Furthermore, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818-819.

[14]*See also Saucier v. Katz*, 533 U.S. 194 (2001), wherein the Supreme Court stated, "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."

13

qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004)).

Importantly, the defense of qualified  immunity is best addressed after determining whether plaintiff has stated a constitutional claim upon which relief can be granted.  "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all.  Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

**b.**      In support of their argument that they "acted reasonably and did not violate the plaintiff's clearly established constitutional rights[,]"it is defendants' position that "the evidence on this record does not support that Kyles suffered a deprivation of a constitutional right[.]" Doc. Ent. 10 at 9-10.  In other words, defendants maintain that "the issue of qualified immunity does not come into play because Kyles did not suffer a constitutional deprivation."  Doc. Ent. 10 at 11 (citing *Dickerson*, 101 F.3d at 1157-1158).

**c.**      With respect to the first prong, plaintiff cites the SRF Ramadan Menu for 2012 (Doc. Ent. 15 at 15-17) and claims that his First Amendment right to free exercise "was clearly burdened,

---

*Saucier*, 533 U.S. at 201.  *See also Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201).   "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Also, the Supreme Court has stated, "[a]lthough we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that *it is often beneficial*." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (emphasis added).

infringed upon and violated by the defendants['] choices <u>NOT</u> to provide [him] with adequate nutrition and calories during the Holy month of Ramadan."  Doc. Ent. 15 at 4.

 With regard to the second prong, plaintiff cites, among other cases, *Alexander*, 31 Fed.Appx. at 179, and *Couch*, 479 F.Supp.2d at 589.  He also cites ¶ G of MDOC PD 04.07.100 ("Offender Meals"), claiming that "the MDOC acknowledges that it must adhere to the adequacy guidelines set by the USDA[.]" Then, citing a calorie chart (Doc. Ent. 15 at 19-22), plaintiff argues that "it is clear that the defendants did not provide adequate nutrition to the plaintiff during Ramadan [2012], by feeding the plaintiff [approximately] 1300 calories per day."  Doc. Ent. 15 at 4-5.

 Finally, as to the third prong, plaintiff states that "the defendants were also given notice through [the July 23, 2012] letters [Doc. Ent. 1 at 6-8] as to the inadequate calories[.]"  Doc. Ent. 15 at 5.

**d.** It is clear that defendants' qualified immunity argument is based upon whether plaintiff has satisfied the first prong of qualified immunity analysis - "whether a constitutional violation occurred[.]"  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).  If the Court agrees with my conclusion that plaintiff has stated a First Amendment free exercise claim, it need not further address the issue of qualified immunity at this time.  This is so, because defendants' discussion of qualified immunity was limited to the first prong, and the discussion is void of argument from defendants on the second and third prongs (whether the right was "clearly established" and whether defendants' actions were "objectively unreasonable").

**3.** **Furthermore, Defendants Kusey, Purves, Beaver and Rapelje Are Not Entitled to Dismissal of Plaintiff's Claims against Them in Their Official Capacities for Injunctive or Declaratory Relief.**

1.      By his January 29, 2013 complaint, plaintiff appears to sue defendants in both their personal[15] and official capacities.  Doc. Ent. 1 at 1-2.  Furthermore, plaintiff seeks injunctive relief, compensatory and punitive damages, as well as an award of costs.  Doc. Ent. 1 at 22.

Defendants note that they "are employees of the State of Michigan who acted in their official capacities[,]" "[t]he State of Michigan has not consented to suit," and they "enjoy Eleventh Amendment immunity in their official capacities."  Doc. Ent. 10 at 9.

Perhaps in response to defendants' Eleventh Amendment immunity argument, plaintiff next argues that he may recover "monetary damages for constitutional violations under First Amendment right[.]"  In so doing, he cites 42 U.S.C. § 1997e(e) ("Limitation on recovery"),[16] *Mason v. Schriro*, 45 F.Supp.2d 709, 718-719 (W.D. Mo. 1999)[17] and relies upon this Court's

---

[15]"[P]ersonal capacity suits provide defendants with a potential defense of qualified immunity, which defense is unavailable in 'official capacity' litigation."  *Harrington v. Grayson*, 764 F.Supp. 464, 476 (E.D. Mich. 1991) (Cook, J., accepting report and recommendation of Pepe, M.J.).

[16]"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C. § 1997e(e).

[17]In *Mason*, the Court determined that "the provisions of 42 U.S.C. § 1997e(e) are not applicable under the facts in this case and plaintiff is not precluded proceeding on his claim for damages under section 1997e(e)."  *Mason*, 45 F.Supp.2d at 720.  However, in *Taylor v. United States*, 161 Fed.Appx. 483 (6th Cir. 2005), the Sixth Circuit, while not ruling on the issue, noted that "the majority of courts hold § 1997e(e) applies to *all* federal prisoner lawsuits."  *Taylor*, 161 Fed.Appx. at 487.

16

decision in *Siggers-El v. Barlow*, 433 F.Supp.2d 811, 816 (E.D. Mich. 2006) (Tarnow, J.).[18]  Doc. Ent. 15 at 5-6.

**2.**     Defendants would be entitled to dismissal with regard to plaintiff's claims against them in their official capacities to the extent plaintiff seeks damages.  This is so, because, to the extent plaintiff sues defendants in their official capacities, it "is not a suit against the official but rather is a suit against the official's office."  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("It is undisputed that since Butler has been sued in her official capacity, Mingus's ADA claim is, for all intents and purposes, against the state of Michigan as the real party-in-interest.").  Thus, plaintiff's claims against defendants in their official capacities are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  In other words, "[t]his bar remains in effect when State officials are sued for damages in their official capacity."  *Graham*, 473 U.S. at 169 (citation omitted).

As the United States Supreme Court has explained, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

---

[18]*Siggers-El*, 433 F.Supp.2d at 816 ("The Court agrees with the foregoing authorities that § 1997e(e) is unconstitutional to the extent that it precludes First Amendment claims such as the one presented in this case. The Court holds that the jury was entitled to find that Plaintiff suffered mental or emotional damages as a result of Defendant's violation of his First Amendment rights. Any other interpretation of § 1997e(e) would be inconsistent with the law and also unconstitutional.').

**3.**      "On the other hand, relief that serves directly to bring an end to a present violation of

federal law is not barred by the Eleventh Amendment even though accompanied by a substantial

ancillary effect on the state treasury."  *Papasan*, 478 U.S. at 278.

Therefore, if the Court agrees with my foregoing conclusion that plaintiff has stated a First

Amendment free exercise claim, then it should also conclude that defendants are not entitled to

dismissal with regard to those claims against them in their official capacities to the extent plaintiff

seeks injunctive or declaratory relief.  *Asociacion De Subscripcion Conjunta Del Seguro De*

*Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 6 (1st Cir. 2007) ("consistent with the

Eleventh Amendment, Flores Galarza is amenable to suit in his official capacity for injunctive

and declaratory relief, but is protected from damages in his personal capacity by the doctrine of

qualified immunity."); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996) ("It is black letter law

that the Eleventh Amendment does not apply to a request for a federal court to grant prospective

injunctive relief against state officials on the basis of federal claims.") (citing *Ex Parte Young*,

209 U.S. 123, 149 (1908)).[19]

**4.      Finally, if the Court agrees with this recommendation, then it should also deny**
**defendants' April 3, 2013 Motion to Stay Discovery (Doc. Ent. 14).**

---

[19]On July 25, 2013, I entered a report (Doc. Ent. 19), recommending that the Court interpret plaintiff's July 1, 2013 filing (Doc. Ent. 18) as a motion for injunctive relief and either (a) deny plaintiff's July 1, 2013 motion for preliminary injunction and temporary restraining order (Doc. Ent. 18) as moot on the basis that plaintiff will receive the relief he requests by way of Judge Quist's July 10, 2013 order in *Heard v. Finco*, Case No. 1:13-cv-00373-GJQ-HWB (W.D. Mich.) or (b) grant plaintiff's motion to the extent it seeks preliminary injunctive relief and enter an order similar to Judge Quist's July 10, 2013 order in *Heard*.

On August 8, 2013, defendants filed an objection (Doc. Ent. 20) to my report and recommendation (Doc. Ent. 19), attached to which is a June 7, 2013 MDOC Memorandum from Michael Martin, CFA Special Activities Coordinator, to CFA Wardens regarding Ramadan Fast - 2013 (Doc. Ent. 20-2).  At this time, consideration of my July 25, 2013 report and recommendation (Doc. Ent. 19) is before Judge Murphy.

Also before the Court is defendants' April 3, 2013 motion to stay discovery (Doc. Ent. 14), attached to which are photocopies of plaintiff's March 8, 2013 discovery requests (Doc. Ent. 14-2). Defendants seek entry of "an order staying discovery until the Court renders a decision on Defendants' pending Motions for Dismissal[,]" Doc. Ent. 14 at 2 ¶ 6.

In support of their motion to stay, defendants point out that their March 25, 2013 and March 28, 2013 dispositive motions (Doc. Entries 10 and 12) assert failure to state a claim, Eleventh Amendment immunity and qualified immunity defenses. Citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991), defendants argue that "until this Court rules on Defendants' dispositive motion and determines whether Plaintiff has a viable legal theory upon which to proceed, Defendants should be relieved of the time, undue burden, and expense involved in responding to interrogatories, admission requests, document requests, depositions, and other time-consuming discovery procedures." Doc. Ent. 14 at 2-3 ¶ 3, Doc. Ent. 14 at 7. Also, citing *Yuhasz v. Brush Wellman, Inc.*, 241 F.3d 559 (6th Cir. 2003), defendants argue that "discovery is not available to a plaintiff until after defendants have had an opportunity to review the complaint and determine whether a motion to dismiss is appropriate." Doc. Ent. 14 at 2 ¶ 4, Doc. Ent. 14 at 8.

Pursuant to my April 29, 2013 order (Doc. Ent. 16), plaintiff's response to defendants' motion to stay was due on May 24, 2013. On May 24, 2013, plaintiff filed a response (Doc. Ent. 17). Therein, plaintiff contends that Fed. R. Civ. P. 26(b)(1) "good cause" is shown by plaintiff's incarceration and limited access to relevant information to support his case. Next, plaintiff contends that Fed. R. Civ. P. 26(b)(3)(A)(ii) "substantial need" has been met, as has Fed. R. Civ. P. 26(b)(1)'s test for relevance, because "[t]he requested information will support that their actions were not a one time event on the part of the defendants but a continual intentional

behavior on their behalf[,] [m]ostly [due] to the fact that[] this behavior was done for several

years, (2011 & 2012)[.]" Doc. Ent. 17 at 1-2.

Also, plaintiff takes issue with defendants' reliance on Fed. R. Civ. P. 26(c)("Protective

Orders.") (*see* Doc. Ent. 14 at 8), claiming that it does not apply to him. Instead, plaintiff refers

to Fed. R. Civ. P. 26(a)(1)(A) and Fed. R. Civ. P. (a)(1)(B)(iv), noting that the instant action is

exempt from initial disclosure. Citing Fed. R. Civ. P. 26(b)(2)(C), which concerns when

limitations on the frequency and extent of discovery are required, plaintiff points out that his

discovery requests (*see* Doc. Ent. 14-2) consisted of only four (4) interrogatories and three (3)

requests for production of documents. Doc. Ent. 17 at 2. Plaintiff notes that he has not filed a

Fed. R. Civ. P. 37 motion to compel but has only "tried to confer with defendant[s] as it pertains

to discovery." Finally, plaintiff cites Fed. R. Civ. P. 26(d), which concerns the timing and

sequence of discovery. Doc. Ent. 17 at 3.

If the Court agrees with my foregoing recommendation that defendants' motions to

dismiss (Doc. Entries 10, 12) be denied and my conclusion that plaintiff has stated a First

Amendment free exercise claim, then the Court should also deny defendants' motion to stay

discovery (Doc. Ent. 14) and set a deadline by which defendants should answer and respond to

plaintiff's March 8, 2013 discovery requests (Doc. Ent. 14-2) in accordance with in Fed. R. Civ.

P. 33(b) ("Answers and Objections.") and Fed. R. Civ. P. 34(b)(2) ("Responses and Objections.").

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

_____s/ Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/5/13


CERTIFICATION OF SERVICE

I hereby certify that a copy of this Order was mailed to  Plaintiff and Counsel of Record on September 5, 2013.


__s/  Carol J. Bethel_____
Case Manager

21
