UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY D. KYLES (#234503),

                                             CASE NO. 2:13-CV-10355
            Plaintiff,     JUDGE STEPHEN J. MURPHY, III
                                             MAGISTRATE JUDGE PAUL J. KOMIVES

v.

GLENN KUSEY,
BRAD PURVES,
TIMOTHY BEAVERS and
LLOYD RAPELJE,

            Defendants,
                                       /

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' SEPTEMBER 23, 2013 SECOND MOTION FOR DISMISSAL (Doc. Ent. 23)

Table of Contents

I.    RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   Plaintiff Kyles's January 29, 2013 complaint (Doc. Ent. 1) is based upon the "free exercise" clause of the First Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   On October 15, 2013, the Court entered an order (Doc. Ent. 27) denying in part defendants' initial motions to dismiss (Doc. Entries 10 & 12). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.   Defendants' second motion for dismissal (Doc. Ent. 23) should be granted in part. . . . . . . . . . . . 5
          1.   Plaintiff's January 29, 2013 prisoner civil rights complaint (Doc. Ent. 1) seeks injunctive relief and damages against defendants in their personal and official capacities. . . . . . . . 5
          2.   Defendants bring their September 23, 2013 second motion for dismissal (Doc. Ent. 23) under Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          3.   Plaintiff's claims for injunctive relief against SRF employees Rapelje, Beavers and Kusey are moot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          4.   Plaintiff's claims for injunctive relief against MDOC employee Purves in his official capacity survive a motion to dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          5.   Plaintiff's claims for damages against MDOC employee Purves in his official capacity are barred by the Eleventh Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          6.   Plaintiff's claims against defendants Kusey, Purves, Beavers and Rapelje in their personal capacities for damages should be dismissed, because these defendants are entitled to qualified immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**I.      RECOMMENDATION:** The Court should grant in part and deny in part defendants' September 23, 2013 second motion for dismissal (Doc. Ent. 23).

**II.     REPORT:**

**A.     Plaintiff Kyles's January 29, 2013 complaint (Doc. Ent. 1) is based upon the "free exercise" clause of the First Amendment.[1]**

Anthony D. Kyles (#234503) is currently incarcerated at the Michigan Department of Corrections (MDOC) Carson City Correctional Facility (DRF). *See* Doc. Ent. 33. On January 29, 2013, while incarcerated at Saginaw Correctional Facility (SRF), Kyles filed the instant, verified prisoner civil rights complaint pro se against Glenn Kusey,[2] Brad Purves, Timothy Beavers[3] and Lloyd Rapelje, based upon the Ramadan 2012 diet. Doc. Ent. 1 at 1-4, 21-22.

Specifically, plaintiff explains that he fasted during Ramadan from July 20, 2012 to August 18, 2012. Doc. Ent. 1 at 3 ¶ 1. During this period, plaintiff claims, Purves, Kusey and Rapelje provided plaintiff "with bag meals for breakfast and dinner[.]" Doc. Ent. 1 at 3 ¶ 2. According to plaintiff, after the menu was provided, he added up the Ramadan menu's caloric intake and recognized that he "was being serve[d] approximately 1300 calories per day, placing a burden upon plaintiff['s] religious freedom." Doc. Ent. 1 at 3 ¶ 3.

---

[1]This case is one of a few before this Court in which plaintiffs contest the adequacy of their diets during Ramadan. *See, i.e., Welch v. Spaulding*, No. 2:12-cv-13172-PDB-PJK (E.D. Mich.); *Conway v. Purves*, No. 2:13-cv-10271-PJD-PJK (E.D. Mich.); and *Kyles v. Kusey*, No. 2:13-cv-10355-SJM-PJK (E.D. Mich.); *see also Heard v. Finco*, No. 2:13-cv-11342-VAR-MJH (E.D. Mich.) (transferred to W.D. Mich. on April 3, 2013 (Case No. 1:13-cv-00373)).

[2]The appearance of counsel indicates that this defendant's first name is Glenn. Doc. Ent. 11.

[3]The appearance of counsel indicates that this defendant's last name is spelled Beavers. Doc. Ent. 9.

By way of July 23, 2012 letters (Doc. Ent. 1 at 6-8), plaintiff wrote to defendants Purves, Kusey, Rapelje and Beavers "regarding the low amounts of calories . . to let them know that the Ram[a]dan daily meals were inadequate." Doc. Ent. 1 at 3 ¶ 4. Kusey met with plaintiff, but responded, "[t]his is what Lansing has provided[,]" while Rapelje and Beavers did not respond to the letter. Doc. Ent. 1 at 3 ¶ 5.

Plaintiff claims he "still adhered to his religious belief and practice, even with the daily caloric intake being inadequate for the whole month of Ramadan." Doc. Ent. 1 at 3 ¶ 6. Plaintiff filed an MDOC grievance regarding the nutritional caloric intake served in the Ramadan bagged meals and pursued that grievance through Step III. Doc. Ent. 1 at 3 ¶¶ 7-9.[4] Plaintiff claims that defendants Purves, Kusey, Rapelje and Beavers provided "a menu for the month of Ramadan that was approximately half the daily calories and nutrition of the required daily caloric intake." Doc. Ent. 1 at 3 ¶ 10.

Plaintiff's claims are based upon the "free exercise" clause of the First Amendment. According to plaintiff, "[t]he deliberate denial of the required daily caloric and nutritional intake during the recognized religious month of Ramadan violated [his] right to freely exercise his religious belief."[5] It is plaintiff's position that "[t]his substantial burden on the free exercise of the plaintiff's religion (for a period of 30 days) [c]onstituted a due process violation under the

---

[4]Attached to plaintiff's complaint are grievance materials for MDOC Grievance Identifier **SRF-2012-07-1205-09B**, which plaintiff initiated during July 2012 regarding, among other things, the nutritional caloric intake served in the Ramadan bagged meals. The text of the Step I grievance mentions Kusey, Beavers, Rapelje and Purves. *See* Doc. Ent. 1 at 9-20.

[5]Although plaintiff's January 29, 2013 original complaint alleges that there was a "deliberate denial of the required daily caloric and nutritional intake[,]" Doc. Ent. 1 at 21, this report and recommendation does not interpret this phrase as alleging an Eighth Amendment deliberate indifference claim.

First Amendment."[6]  Furthermore, plaintiff claims he "has been and will continue to be irreparably injured by the conduct of being deprived of policy mandated (adequate) calories during Ramadan by the defendants unless [the] Court grants the preliminary injunctive relief which the plaintiff seeks."  Doc. Ent. 1 at 21.  Plaintiff seeks injunctive relief, as well as compensatory damages, punitive damages, a jury trial and costs.  Doc. Ent. 1 at 22.

**B.     On October 15, 2013, the Court entered an order (Doc. Ent. 27) denying in part defendants' initial motions to dismiss (Doc. Entries 10 & 12).**

**1.**     Judge Murphy has referred this case to me for all pretrial matters.  Doc. Ent. 8.  On July 25, 2013, I entered a report and recommendation (Doc. Ent. 19) regarding plaintiff's July 1, 2013 filing (Doc. Ent. 18).

On August 8, 2013, defendants filed an objection.  Doc. Ent. 20.  On September 6, 2013, plaintiff filed an objection.  Doc. Ent. 22.

Still, on September 25, 2013, Judge Murphy entered an opinion and order (Doc. Ent. 25) denying as moot plaintiff's motion for injunctive relief (Doc. Ent. 18).

**2.**     In the meantime, on September 5, 2013, I entered a report and recommendation (Doc. Ent. 21) regarding defendants Purves, Beavers and Rapelje's motion to dismiss (Doc. Ent. 10),

---

[6]This report and recommendation interprets plaintiff's January 29, 2013 original complaint as based solely upon an alleged violation of the "free exercise" clause of the First Amendment to the United States Constitution.  *See* Doc. Ent. 1 at 21.  Although plaintiff's "statement of claims" makes use of the phrase "due process violation," Doc. Ent. 1 at 21, the Supreme Court of the United States has instructed that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989).  In other words, this report and recommendation does not interpret plaintiff's original complaint as alleging an independent Fourteenth Amendment due process claim.

This conclusion is unchanged by plaintiff's October 28, 2013 references to "Fourteenth Amendment," "due process" or "liberty interest."  *See* Doc. Ent. 30 at 1-2, 4.

defendant Kusey's motion to dismiss (Doc. Ent. 12), defendants' motion to stay discovery (Doc. Ent. 14) and plaintiff's motion in response (Doc. Ent. 15).

Plaintiff filed an objection (Doc. Ent. 24) on September 23, 2013. On October 15, 2013, Judge Murphy entered an order (Doc. Ent. 27) overruling plaintiff's objections (Doc. Ent. 24) and adopting report and recommendation (Doc. Ent. 21), denying defendants' motions to dismiss in part (Doc. Entries 10 & 12), and denying plaintiff's request (Doc. Ent. 15) for the relief sought in his complaint. On December 9, 2013, Judge Murphy entered an amended order (Doc. Ent. 32).

**C.     Defendants' second motion for dismissal (Doc. Ent. 23) should be granted in part.**

**1.     Plaintiff's January 29, 2013 prisoner civil rights complaint (Doc. Ent. 1) seeks injunctive relief and damages against defendants in their personal and official capacities.**

By his January 29, 2013 complaint, plaintiff sues defendants in their personal and official capacities. *See* Doc. Ent. 1 at 1-2. Plaintiff seeks injunctive relief, as well as compensatory and punitive damages and an award of costs. Doc. Ent. 1 at 22.

**2.     Defendants bring their September 23, 2013 second motion for dismissal (Doc. Ent. 23) under Fed. R. Civ. P. 12(b)(6).**

The instant motion is based upon Fed. R. Civ. P. 12(b)(6).[7] Specifically, defendants ask that the Court enter an order dismissing plaintiff's complaint (Doc. Ent. 1) and granting dismissal in defendants' favor. Doc. Ent. 23 at 1. The crux of defendants' argument (Doc. Ent.

---

[7]This report assumes that defendants' September 23, 2013 filing's only mention of "summary judgment," which appears in the text of their sole argument - "This Court should grant summary judgment in favor of Defendants because they are entitled to qualified immunity[,]" Doc. Ent. 23 at 8 - is a typographical error. I take this position, because the motion itself is titled a "second motion for dismissal," and cites Fed. R. Civ. P. 12(b)(6). See Doc. Ent. 23 at 1.

23 at 8-13) is that "the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population[,]" and that "[d]efendants' actions were not objectively unreasonable in light of the current law."  Doc. Ent. 23 at 13.

### 3. Plaintiff's claims for injunctive relief against SRF employees Rapelje, Beavers and Kusey are moot.

It appears that, at the time plaintiff filed his complaint, Glenn Kusey was the Assistant or Acting Food Service Director at SRF (*see* Doc. Ent. 1 at 1, 14); Lloyd Rapelje was the SRF Warden (Doc. Ent. 1 at 2); and Timothy Beavers was an SRF Chaplain (Doc. Ent. 1 at 2).  *See also* Doc. Ent. 10 at 5, Doc. Ent. 23 at 6.

To the extent plaintiff's complaint seeks injunctive relief against SRF employees Rapelje, Beavers and Kusey, such claims are moot.  This is so, because plaintiff has since been transferred and is currently incarcerated at DRF.  *Parks v. Reans*, 510 Fed.Appx. 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.") (referencing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996)).

### 4. Plaintiff's claims for injunctive relief against MDOC employee Purves in his official capacity survive a motion to dismiss.

Brad Purves is the Food Service Program Manager, Correctional Facilities Administration (CFA) for the MDOC.  Doc. Ent. 10 at 5; *see also* Doc. Ent. 23 at 6.  The Court assumes this is a "central office" MDOC function; thus, plaintiff's transfer from SRF to another MDOC correctional facility would not moot plaintiff's claims for injunctive relief against Purves.

"[R]elief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on

the state treasury." *Papasan*, 478 U.S. at 278.  Therefore, defendant Purves is not entitled to dismissal with regard to those claims against him in his official capacity to the extent plaintiff seeks injunctive or declaratory relief.  *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 6 (1st Cir. 2007) ("consistent with the Eleventh Amendment, Flores Galarza is amenable to suit in his official capacity for injunctive and declaratory relief, but is protected from damages in his personal capacity by the doctrine of qualified immunity."); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996) ("It is black letter law that the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims.") (citing *Ex Parte Young*, 209 U.S. 123, 149 (1908)).

**5.     Plaintiff's claims for damages against MDOC employee Purves in his official capacity are barred by the Eleventh Amendment.**

Defendant Purves is entitled to dismissal with regard to plaintiff's claims against him in his official capacity to the extent plaintiff seeks damages.  This is so, because, to the extent plaintiff sues defendant Purves in his official capacity, it "is not a suit against the official but rather is a suit against the official's office."  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) ("It is undisputed that since Butler has been sued in her official capacity, Mingus's ADA claim is, for all intents and purposes, against the state of Michigan as the real party-in-interest.").  Thus, plaintiff's claims against defendant Purves in his official capacity are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  In other words, "[t]his bar remains in effect

when State officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169 (citation omitted).

As the United States Supreme Court has explained, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

**6. Plaintiff's claims against defendants Kusey, Purves, Beavers and Rapelje in their personal capacities for damages should be dismissed, because these defendants are entitled to qualified immunity.**

**a. Defendants' Purves, Kusey, Beavers and Rapelje's September 23, 2013 second motion for dismissal.** Defendants assert that plaintiff has "failed to show that Defendants violated clearly established statutory or constitutional rights." Thus, defendants maintain, the Court should dismiss plaintiff's claims against them, because "they are entitled to qualified immunity." Doc. Ent. 23 at 8-13.

Citing *Alderson v. Pitcher*, No. 94-1254, 1994 WL 529852 (6th Cir. Sept. 28, 1994); *Mabon v. Campbell*, Nos. 98-5468, 98-5513, 2000 WL 145177 (6th Cir. Feb. 1, 2000)*; Jaami v. Compton*, No. 98-5055, 1999 WL 455374 (6th Cir. June 23, 1999) and *Hall v. Jabe*, No. 7:11-v-377, 2012 WL 2789734 (W.D. Va. July 9, 2012), defendants state, "[t]here appears to be no published Sixth Circuit decision that squarely addresses the issue presented in this case." Doc. Ent. 23 at 9-10. And, defendants could not find a case "establishing that a prisoner choosing to go on a Ramadan Fast is entitled to the exact number of calories as the general population." Doc. Ent. 23 at 10. Citing my July 3, 2013 report and recommendation in *Welch v. Spaulding*, No. 2:12-cv-13172-PDB-PJK (E.D. Mich.), defendants contend that "the law was not clearly

8

established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population." Doc. Ent. 23 at 13.

Furthermore, defendants believe they "have made reasonable accommodations by providing a bagged meal to be eaten before and after daylight hours." Doc. Ent. 23 at 10. It is defendants' position that, "[w]hile Plaintiffs may have preferred larger meals, there is no evidence that Defendants' actions actually interfered with Plaintiffs' ability to exercise their religion." Moreover, defendants assert, "[h]aving a reduction in calories should be expected. After all, that is what a fast entails. But the amount of calories provided to Plaintiffs was not so deficient as to interfere with their right to practice their religion, or so deficient as to violate the minimal necessities required under the Eighth Amendment." Doc. Ent. 23 at 11. Defendants note that "[f]asting, by definition, means voluntarily going without food. [Thus,] Defendants' actions were not objectively unreasonable in light of the current law." Doc. Ent. 23 at 13.[8]

**b.      Plaintiff's October 28, 2013 response.** By way of the Court's September 27, 2013 notice, plaintiff's response was due on October 28, 2013. Doc. Ent. 26. On October 28, 2013, plaintiff filed a response, arguing that "qualified immunity is not available when officials in their individual capacity violate 'clearly established' constitutional rights." Doc. Ent. 30 at 1.

Specifically, plaintiff responds that defendants deprived him of "the nutritional and caloric intake that was required by defendants during plaintiff's Obligatory Ramadan fast." Citing Purves's June 25, 2012 memorandum regarding 2012 Ramadan (Doc. Ent. 15 at 24-25),

---

[8] A portion of the brief attached to defendants Purves, Kusey, Beavers and Rapelje's September 23, 2013 second motion for dismissal in the instant case is similar to a portion of the brief attached to defendants' Spaulding, Purves and Kusey's September 24, 2012 motion for summary judgment in *Welch*. *Compare* Doc. Ent. 11 at 10-12 (Case No. 2:12-cv-13172-PDB-PJK), Doc. Ent. 23 at 11-13 (Case No. 2:13-cv-10355-SJM-PJK).

plaintiff claims he was under the expectation that defendants would adhere to MDOC Policy Directives, such as 05.03.150 ("RELIGIOUS BELIEFS AND PRACTICES OF PRISONERS") and 04.07.100 ("OFFENDER MEALS"), "in accommodating plaintiff with his religious tenets[.]" It is plaintiff's position that defendants violated his right to freely exercise his religion "by not providing plaintiff due process to dispute their change in this policy prior to Ramadan." Doc. Ent. 30 at 2. According to plaintiff, defendants did not invoke the process set forth in MDOC PD 01.04.110 ("ADMINISTRATIVE RULES, POLICIES AND PROCEDURES") ¶ V ("VARIANCES"), because "defendants knew it to be a clear violation of law." Doc. Ent. 30 at 2-3.

Plaintiff contends that defendants' policies and the language of those policies are "mandatory and clear as to what plaintiff expected from this Ranadan Fast." In plaintiff's opinion, "[d]efendants were fully aware of their actions and clearly a reasonable person would have known that their actions were unconstitutional." Doc. Ent. 30 at 3.

Plaintiff explains he was clearly entitled to adequate nutrition, to due process and "to be free to exercise his religion without these burdens being place[d] upon him." Perhaps invoking *Thompson v. Com. of Ky.*, 712 F.2d 1078 (6th Cir. 1983),[9] plaintiff states, "[t]he belief that they can feed a person no more th[a]n 650 calories for breakfast and expect for them to go at least 17 hours and then provide them with another 650 calories for 30 days, is outside right conscience." Doc. Ent. 30 at 4.

---

[9]"Although prisoners obviously do not retain the same freedom to exercise their religion as they would in the world outside the prison, they may not be denied basic rights of conscience." *Thompson*, 712 F.2d at 1080.

Finally, plaintiff asks the Court to adhere to the conclusions I reached in my September 5, 2013 report and recommendation (Doc. Ent. 21). Plaintiff claims it is prejudicial to him for defendants to get a second chance in the instant motion to dismiss (Doc. Ent. 23) to argue what they did not argue in their earlier motions to dismiss (Doc. Entries 10 & 12). Doc. Ent. 30 at 4.

**c.    My September 5, 2013 report and recommendation in the instant case, which has been adopted by this Court, did not address the issue of qualified immunity.** Therein, I made the following conclusions:

1. The Court should deny defendants' March 2013 motions to dismiss.

2. If the Court agrees with my foregoing recommendation, then it need not address the issue of qualified immunity.

3. Furthermore, Defendants Kusey, Purves, Beaver[s] and Rapelje Are Not Entitled to Dismissal of Plaintiff's Claims against Them in Their Official Capacities for Injunctive or Declaratory Relief.

4. Finally, if the Court agrees with this recommendation, then it should also deny defendants' April 3, 2013 Motion to Stay Discovery (Doc. Ent. 14).

*See* Doc. Ent. 21 at 11-20.

Within my first conclusion, I noted, "plaintiff's complaint states a claim that his First Amendment right to free exercise was substantially burdened by subjecting him to a Ramadan menu that was approximately half of the required daily nutritional and caloric intake." Doc. Ent. 21 at 12 (referencing Doc. Ent. 1 at 3, 21). In support of this conclusion, I relied upon *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010), *Makin v. Colorado Dept. Of Corrections*, 183 F.3d 1205, 1211-1214 (10th Cir. 1999), and *Couch v. Jabe*, 479 F.Supp.2d 569, 588-589 (W.D. Va. 2006).

Within my second conclusion, I stated, "defendants' discussion of qualified immunity was limited to the first prong, and the discussion is void of argument from defendants on the second and third prongs (whether the right was "clearly established" and whether defendants' actions were "objectively unreasonable")." Doc. Ent. 21 at 15-16.

**d.      Qualified Immunity.**  As the United States Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).[10]

The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996)).[11]  *See also Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).

---

[10]Furthermore, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818-819.

[11]*See also Saucier v. Katz*, 533 U.S. 194 (2001), wherein the Supreme Court stated, "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004)).

Importantly, the defense of qualified immunity is best addressed after determining whether plaintiff has stated a constitutional claim upon which relief can be granted. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

**e.     Here, I am persuaded by my July 3, 2013 report and recommendation in *Welch v. Spaulding*, No. 2:12-cv-13172-PDB-PJK (E.D. Mich.), which concluded, in part, that Purves and Spaulding were entitled to summary judgment as to Plaintiff's claims against them in their personal capacities for damages, because they were entitled to qualified immunity.** In that report and recommendation, which is still pending before Judge Borman, I recommended that the Court "conclude there is a genuine issue of material fact that plaintiff's First Amendment

---

parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. *See also Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. Feb. 25, 2009) (citing *Saucier*, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

Also, the Supreme Court has stated, "[a]lthough we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that *it is often beneficial*." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (Jan. 21, 2009) (emphasis added).

right to free exercise was substantially infringed by subjecting him to a Ramadan menu that was approximately half of the daily nutritional and caloric intake of the regular menu at the SRF." Doc. Ent. 25 at 13-21. I also concluded that there was "a genuine issue of material fact as to the reasonableness of a practice which results in a prisoner who is observing Ramadan receiving approximately one half of the caloric intake of a prisoner who is not observing Ramadan." Doc. Ent. 25 at 21-22.

Then, I stated that "[d]efendants Purves and Spaulding are Entitled to Summary Judgment as to Plaintiff's Claims against Them in Their Personal Capacities for Damages, because they are entitled to qualified immunity." Doc. Ent. 25 at 25-32. In so doing, I agreed with the defendants in that case that "'the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population.'" Doc. Ent. 25 at 29-31. Within that conclusion, I noted that "the unpublished Sixth Circuit decisions in *Alderson*, *Mabon* and *Jaami* do not examine the caloric adequacy of a fasting religious diet." Doc. Ent. 25 at 30.

**f.      In the instant case, the Court should likewise conclude that defendants Kusey, Purves, Beavers and Rapelje are entitled to dismissal of plaintiff's First Amendment "free exercise" claims against them in their personal capacities for damages, because the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population.** The Court understands plaintiff's concern that he is prejudiced by defendants taking a second bite at the apple in their second motion to dismiss (Doc. Ent. 23) to present an argument not presented in their prior motions to dismiss (Doc. Entries 10 & 12) - namely that they are entitled to qualified immunity, because the law was not

clearly established and/or their actions were not objectively unreasonable. *See* Doc. Ent. 30 at 4; *compare* Doc. Ent. 21 at 15-16, Doc. Ent. 23 at 10-11, 13.

Nonetheless, as the Supreme Court of the United States has noted, qualified immunity operates

> "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S., at 206[]. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell [v. Forsyth*, 472 U.S. 511,] 535, n. 12[(1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640[] (1987).

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) ("The particular circumstances of the given case need not have been previously held illegal for the right to be 'clearly established,' but the right must be defined in a manner that puts a reasonable official on notice that his actions are illegal or unconstitutional.").

I conclude here, as I did in *Welch*, that "the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population." Doc. Ent. 23 at 13.

**g.     If the Court agrees, it need not address the reasonableness of defendants' actions.**

For example, defendants state that "[d]efendants have made reasonable accommodations by providing a bagged meal to be eaten before and after daylight hours." Doc. Ent. 23 at 10. Defendants also state that "[f]asting, by definition, means voluntarily going without food. Defendants' actions were not objectively unreasonable in light of the current law." Doc. Ent. 23 at 13.

15

On the other hand, attached to plaintiff's original complaint are July 23, 2012 letters to Purves and Kusey, each of which mentions that plaintiff is not "receiving adequate calories with these bag meals[.]" Doc. Ent. 1 at 6-7. Furthermore, plaintiff's October 28, 2013 response references Purves's June 25, 2012 memorandum regarding 2012 Ramadan (*see* Doc. Ent. 15 at 24-25), as well as several MDOC Policy Directives, and contends that "[d]efendants were fully aware of their actions and clearly a reasonable person would have known that their actions were unconstitutional." Doc. Ent. 30 at 2-3.

However, for purposes of a qualified immunity analysis, if the Court agrees that the law was not clearly established that a prisoner fasting for Ramadan was entitled to the exact number of calories as the general population, then the Court need not address whether these defendants' actions were reasonable.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 23, 2014                                              s/Paul J. Komives                         
                                                                               U.S. MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on July 23, 2014, electronically and/or by U.S. Mail.
                                                                               s/Michael Williams                       
                                                                               Case Manager for the
                                                                               Honorable Paul J. Komives